```
 1
 2
 3
 4
 5
 6
 7
 8                      UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF WASHINGTON
 9                              AT TACOMA

10   JULIE A. WILLIAMS,
                                              CASE NO.    C05-5622RBL
11                Plaintiff,

12       v.                                   REPORT AND
                                              RECOMMENDATION
13   JO ANNE B. BARNHART, Commissioner of
     Social Security Administration,          Noted for April 7, 2006
14
                  Defendant.
15
```

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been fully briefed. After carefully reviewing the record, the undersigned recommends that the Court remand the matter for further proceedings.

FACTUAL BACKGROUND

Plaintiff, Julie Williams, was born in 1959. She completed the eleventh grade of high school, and she has past releveant work experince as a general clerk and automobile parts salvager. Ms. Williams testified that she worked with her ex-husband in a business recycling automobile parts. Apparently, they bought catalytic converters and radiators from wrecking yards, tore them down, cleaned them, and shipped them to Alabama. The work also required her to spend one or two hours per month on paperwork, keeping track of the money for their tax accountant. She did this work from 1989 to 1995, until she started falling down and dropping things. She was told by Dr. Newell that she had arthritis and she was referred her to Dr. Halpin for ankle instability.

## PROCEDURAL HISTORY

Ms. Williams filed an application for Title XVI Supplemental Security Income ("SSI") benefits on February 12, 1999 (Tr. 131). Plaintiff alleged disability due to neck, hip, shoulder, hand and ankle pain, and fatigue from arthritis and Hepatitis C (Tr. 50). Her claims were denied on initial review. After two hearings, held on March 7, 2001 and June 5, 2001, the administrative law judge ("ALJ") further denied her claim in a decision dated October 1, 2001, finding that she could perform past relevant work as an accounting clerk, despite arthritis which limited her fine and gross manipulation in her left hand and her ability to lift and carry objects. (Tr. 47-56). Ms. Williams appealed to the Appeals Council, which remanded the case to resolve issues relating to the vocational analysis. (Tr. 63-65).

A supplemental hearing was conducted by a different ALJ on September 15, 2003. The ALJ denied plaintiff's claims in a decision dated April 24, 2004, finding that there was nothing wrong with her hands, but that she was limited to sedentary level work due to arthritis in her ankle and Hepatitis C. (Tr. 25-42). The Appeals Council denied Williams' request for review on August 6, 2005. (Tr. 11-13).

A timely Complaint was subsequently filed in this Court for judicial review of the final administrative decision. In her Opening Brief, Ms. Williams argues the ALJ and the administration's decision is erroneous and argues the court should reverse the administrative decision and award benefits. Specifically, Ms. Williams argues the following errors: (i) the ALJ's analysis of Ms. Williams' hand impairment is contrary to the overwhelming evidence of record and is legally erroneous under the step-two standards; (ii) the ALJ's rejection of the opinions of Dr. Cooper, the treating physician, was legal error; (iii) the ALJ accepted Dr. Layton's finding that Williams did not have rheumatoid arthritis, but then improperly ignored this examining specialist's diagnosis of nodal osteoarthritis; (iv) the ALJ's analysis of the lay evidence was contrary to Ninth Circuit law, as he rejected the observations of friends and family members solely because of a perceived lack of objective medical evidence; (v) the ALJ erred by failing to include handling and fingering limitations in his RFC finding, and by relying on VE testimony in response to an incomplete hypothetical question; and (vi) the jobs identified by the VE were light level jobs, and do not reflect the limitation to standing/walking only two hours in an eight hour day.

After reviewing the record, this court finds that the administrative decision should be remanded for

REPORT AND RECOMMENDATION
Page - 2

further proceedings.

## DISCUSSION

The Commissioner's decision must be upheld if the ALJ applied the proper legal standard and the decision is supported by substantial evidence in the record. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, this Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

### A. THE ALJ ERRED WHEN HE FAILED TO CONSIDER MS. WILLIAMS' ARTHRITIS AS A "SEVERE" IMPAIRMENT

Step-two of the administration's evaluation process requires the ALJ to determine whether an impairment is severe or not severe. 20 C.F.R. §§ 404.1520, 416.920 (1996). An impairment is "not severe" if it does not "significantly limit" the ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step-two severity determination in terms of what is "not severe." According to the Commissioner's regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 404.1521(a)(1991). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 140.1521(b); Social Security Ruling 85- 28 ("SSR 85-28"). An impairment or combination of impairments can be found "not severe" **only** if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individuals ability to work." *See* SSR 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1998) (adopting SSR 85-28)(emphasis added).

Plaintiff alleges she is unable to work due, in large part, to her inability to effectively use her hands to grip and hold onto items. For instance, she has problems gripping the steering wheel with her hands, and only drives short distances. (Tr. 519). Her ability to use her hands had gotten worse during the 2½ years

since the first hearing, and it hurt just to sign her name and turn pages in a book. She can wash dishes, but not glasses because she drops and breaks them. (Tr. 520). She also drops items such as her wallet and food. (Tr. 521). She also testified that her right hand has gotten worse over time, and she has to soak it in hot water in the mornings. She testified that she could write for up to 10 minutes before her hand cramped up and started hurting. (Tr. 471). She would then soak it in hot water and rest it for a couple of hours before writing more. She stated that it took her several days to complete the SSI questionnaires. (Tr. 474-475). She cannot pick up small items such as needles because she cannot feel them. (Tr. 471). She has to use big-handled utensils, and does not use knives at all anymore because she cut herself when she tried. (Tr. 472).

In his decision dated April 24, 2004, ALJ Batiste stated, "I find that the claimant has no medically determinable impairment that could cause her alleged limitations in handling and fingering." (Tr. 38). In making this decision, the ALJ critically analyzed the opinion and treatment of Dr. Cooper (see discussion below), concluding that Ms. Williams did not suffer from rheumatoid arthritis. The ALJ did not assign any limitations or consider any limitations of the use of her hands in his analysis of the other impairments that were found to be severe.

A review of the medical record reflects sufficient evidence was presented by Plaintiff to support her allegations of limited use of her hands, including the following cited by plaintiff in her Reply Brief:

- 3/25/99 Nurse Oliver reviewed a lab study that reflected a positive RA (Tr. 220);
- An 4/10/99 lab report indicated a positive ANA screen (Tr. 209);
- 6/14/99 Dr. Thompson noted decreased range of motion in the left wrist (Tr. 243);
- An 8/17/00 x-ray of the left wrist showed changes consistent with arthritis (Tr. 274);
- 8/17/00 Dr. Cooper reported swelling in the PIP, DIP and MCP joints of the fingers[2], with decreased grip strength (Tr. 256);
- 10/13/00 Dr. Cooper noted definite decreased grip strength bilaterally (Tr. 255);
- 4/10/01 Dr. Kirkpatrick saw enlargement of the DIP joints (Tr. 308);
- 3/14/01 Dr. Cooper noted considerable erythema[3] over 2/3s of her hands (Tr. 317);
- On 7/17/01 Dr. Layton reported Heberden's nodes[4] (Tr. 322);
- 8/16/01 Dr. Cooper observed deformities of MCP & DIP joints of both hands (Tr. 386);

REPORT AND RECOMMENDATION
Page - 4

1       • On 9/27/01 Dr. Cooper noted erythema and warmth around her MCP joints with decreased grip
2  strength (Tr. 382);
3       • 10/19/01 Dr. Cooper commented on a positive ANA titer with obvious swelling at the MCP joints
4  and decreased grip strength (Tr. 379);
5       • On 11/7/01 Dr. Layton reported Heberden's nodes (Tr. 321);
6       • 7/11/02 Dr. Cooper observed swelling of MCP joints of the second digit bilaterally with slow and
7  limited range of motion of the hands. She could not make a tight fist and flexion was limited. Wrist ROM
8  was limited, particularly in dorsi flexion and ulnar deviation. Very limited ability to pronate. (Tr. 361);
9       • 3/18/03 Dr. Cooper noted enlargement and erythema of several MCP and DIP joints (Tr. 431);
10 and
11      • 6/6/03 Dr. Cooper reported limited strength in the hands (Tr. 426).

Further supporting a finding that Ms. Williams has properly supported an impairment related to the use of her hands is the administration's earlier decision by ALJ Denny Allen, dated October 1, 2001.   Judge Allen reviewed the same medical evidence, and he found that her arthritis in her hands was a "severe" impairment (Tr. 53), and he opined that she has "limited fine and gross manipulation of the left hand" (Tr. 54).

In sum, the court should find that the administration's analysis of Ms. Williams' hand impairment(s) was erroneous given the medical evidence of record supporting Ms. Willams' allegations of limited us of her hands.

### B.   THE ALJ FAILED TO PROPERLY CONSIDER THE MEDICAL EVIDENCE

The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996).

Here, Plaintiff argues the ALJ improperly rejected the opinion of Dr. Cooper.  Plaintiff testified that

her treating physician is Dr. Cooper, and that he prescribes hydrocodone and methotrexate for her arthritis and pain, which help her function, but also make her fuzzy-headed. (Tr. 466).   Dr. Cooper saw her for treatment at least 54 times over the 3½ year period. Dr. Cooper consistently reported that Ms. Williams had severe limitations in the ability to use her hands for repetitive and fine motions, and is further limited due to the arthritis in her hip and ankle. (Tr. 256, 292-293, 317-318, 347-348, 361, 367, 380, 381, 396-397 and 431).

The ALJ noted Dr. Cooper's examinations and medical reports at various points in his opinion with respect to Plaintiff's various medical conditions.  Thus it is not clear that the ALJ necessarily rejected all of Dr. Cooper's assessments.   However, when discussing Plaintiff's hand limitations, the ALJ did not accept Dr. Cooper's opinion. He stated:

> The claimant's treating physician has stated that the claimant has objective signs of problems with her hands including swelling in various joints in her hands. No other doctor, including specialists in the field, has noted swelling in any pattern other than the mild Heberden's nodes. The majority of tests for rheumatoid arthritis have been negative and her most recent sedimentation rate was zero, suggesting no inflammatory process. Dr. Cooper referred the claimant to Dr. Layton to clarify the claimant's diagnosis, but he has ignored Dr. Layton's specific findings that she did not have rheumatoid arthritis and that she should not be on methotrexate.  Dr. Cooper clearly accepted that Dr. Layton was an appropriate expert to determine the claimant's diagnosis, and I will give Dr. Layton's opinion as a specialist greater weight tn Dr. Cooper's opinion.  Particularly, as the pattern of the claimant's hand limitations have varied greatly, and other doctors and medical professionals have also been unable to duplicate Dr. Cooper's findings on examination.  The claimant does have early Heberden's nodes, but these would not be expected to cause the claimant any significant limitations in her hand functioning at this early stage.
>
> [Omitted]
>
> Dr. Cooper has apparently accepted the claimant's reports of pain as true.  He notes that she has pain even when he finds no objective findings. He has also continued to treat her for rheumatoid arthritis despite the recommendations of Dr. Layton that the claimant not be treated for this.  There is little evidence in the record that the claimant has responded to methotrexate, a form of chemotherapy, but has been prescribing this for years, even though this medication is only to be used for severe rheumatoid arthritis unresponsive to conventional therapy.  As the claimant probably does not even have rheumatoid arthritis, and  has a sedimentation rate of zero, it seems fair to conclude that her "rheumatoid arthritis" is not severe.

(Tr. 38-39).

After reviewing the record, this court finds the ALJ's analysis of the medical evidence improper.  As noted by Plaintiff in her the briefing, the ALJ unfairly characterized Dr. Cooper continued treatment with methotrexate. Dr. Cooper prescribed that medication because it helped Williams' pain. When she discontinued using the medication, both in February 2000 due to vaginal bleeding, and in July 2001 upon

the advice of Dr. Layton, her pain got worse. (Tr. 258, 386).

More importantly, the ALJ analysis and preference to Dr. Layton's opinion fails to acknowledge the existence of any problem whatsoever related to the pain and limited use of plaintiff's hands. As noted above the ALJ was very critical of a diagnosis of rheumatoid arthritis offered by Dr. Cooper, but that does not negate the fact plaintiff has presented competent medical evidence to explain the allegations of pain and limited use of her hands, including the opinion of Dr. Layton. Dr. Layton, diagnosed Williams with nodal osteoarthritis in her hands. (Tr. 322). Osteoarthritis causes pain as alleged by Ms. Williams, and this diagnosis was confirmed by the medical expert, Dr. Bigley, who testified that major pain and stiffness are symptoms of osteoarthritis. (Tr. 501). In sum, the ALJ simply failed to acknowledge any of the medical evidence which supports Plaintiff's allegations on pain and limited use of her hands.

Having found that the ALJ failed to properly consider Ms. Williams hand impairment and the medical evidence supporting limited use of her hands, it follows that the ALJ also erred: (i) in his assessment of Plaintiff's residual functional capacity (the ALJ's RFC failed to include any limitation related to the limited use of her hands), (ii) in his rejection of the lay testimony (it was based on his finding of "not objective basis for her hand limitations") and (iii) in is reliance on the Vocational Expert's testimony (it was based on an incomplete hypothetical that did not include any limitations related to the pain and limited use of plaintiff's hands). Based on the errors described above the matter should be remanded to the administration.

### C.   THE COURT SHOULD REMAND THE MATTER FOR FURTHER PROCEEDINGS

The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir.1989) (*citing* Varney v. Secretary of HHS, 859 F.2d 1396, 1399 (9th Cir., 1988). In Varney, the Ninth Circuit held that in cases where the record is fully developed, a remand for further proceedings is unnecessary. Varney, 859 F.2d at 1401. *See also* Reddick v. Chater, 157 F.3d 715, 728-730 (9th Cir. 1998)(case not remanded for further proceedings because it was clear from the record claimant was entitled to benefits); Swenson, 876 F.2d at 689 (directing an award of benefits where no useful purpose would be served by further proceedings); Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir.1989) (same); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.1987) (accepting uncontradicted testimony as true and awarding benefits where the ALJ failed to

1  provide clear and convincing reasons for discounting the opinion of claimant's treating physician).

2  It is clear from the record that the medical evidence supports a limitation related to Ms. Williams
3  allegations of pain and loss of strength in her hands. However, the level or degree of severity and the exact
4  date of impairment is unresolved. As plaintiff testified, the pain in her hands has increased since her
5  original administrative hearing with ALJ Allen. Accordingly, the matter must be remanded to provide the
6  administration the opportunity to properly consider the medical evidence related to Ms. Williams' hands
7  and to consider whether this additional impairment would render her disabled, as defined by the Social
8  Security Act and regulations.

## CONCLUSION

10  Based on the foregoing discussion, the administrative decision should remanded for further
11  proceedings. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure,
12  the parties shall have ten (10) days from service of this Report to file written objections. *See also*
13  Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal.
14  Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is
15  directed to set the matter for consideration on **April 7, 2006**, as noted in the caption.

16  DATED this 15th day of March, 2006.

        */s/ J. Kelley Arnold*
        J. Kelley Arnold
        U.S. Magistrate Judge

REPORT AND RECOMMENDATION
Page - 8